124 So.2d 664

Reuben NEWTON

v.

Edna WARE et al.

Edna WARE et al.

v.

Reuben NEWTON.

6 Div. 235, 235–A.

Supreme Court of Alabama.

Nov. 17, 1960.

Joel Robinson, Jasper, for appellees.

Curtis, Maddox & MacLaurin, Jasper, and John T. Batten, Birmingham, for appellant.

COLEMAN, Justice.

This is an appeal by one respondent from two decrees in equity which determined the rights of the parties, respectively, in and to a parcel of land in Walker County. The decrees ordered and approved a sale of the land and provided for distribution of the purchase money. Appellees have cross-assigned errors.

Appellees, complainants below, are three of the children of Luther Madison who died September 9, 1954. His widow and their other eight children, six of whom are minors, and appellant are parties respondent.

The amended bill alleges that Madison, during his lifetime, entered into a contract to purchase the land from a vendor who predeceased Madison; that Madison went into possession seven years prior to his death and remained in possession of the land as his homestead until his death; that prior to his death, he filed a bill in equity against the heirs and executor of said vendor to compel specific performance of said contract; that appellant, an attorney at law, was employed by Madison to represent him and that said bill was filed in 1953 in Walker County; that no trial was ever had in said suit; that shortly before his death, Madison requested appellant to continue his efforts to obtain the land for decedent's (Madison's) family; that two weeks after decedent's death, appellant informed the heirs of the vendor that decedent had died and that decedent's family was in a position to settle the pending suit under an agreement theretofore reached between appellant and the heirs of the vendor; that appellant instructed the heirs of said vendor to prepare a quitclaim deed to the widow and draw a draft on appellant through a bank at Jasper for $800; that the quitclaim deed to the widow, reciting a consideration of $800, was delivered to appellant and later recorded in Deed Book 667, page 525; that a warranty deed purporting to bear the signature of the widow, dated March 9, 1955, and reciting a consideration of $800, conveying said land to appellant is recorded in Deed Book 667, page 528. The bill avers on information and belief that the widow did not pay said consideration of $800 to said heirs of the vendor, and if she did pay same as settlement of said suit for specific performance, she became a trustee for all the heirs of Luther Madison, deceased, and could not convey the land without being joined by the adult heirs or without a decree of a court having jurisdiction to convey the interests of the minor heirs; that said Luther Madison died intestate; that there has been no administration on his estate, and no application has been made to any court having jurisdiction to convey the interests of the minor heirs; that the widow did not execute said warranty deed to appellant, and that if she did execute it, she did so without authority to convey the interests of the other heirs.

The prayer is for a decree declaring void the warranty deed from the widow to appellant and declaring that the widow holds title in trust for the heirs of Luther Madison, deceased. The bill also prays that appellant be required to account for waste and for use of the land.

Appellant's answer averred on information and belief that decedent did not enter into a contract to purchase the land; that appellant did file for decedent a bill for specific performance of the contract, but that on investigation appellant was not able to verify that such contract had been made by the deceased vendor and Luther Madison; that appellant was advised by the executor of the vendor's will that no such contract existed and that decedent was living on the land as a tenant; that appellant was informed by Luther Madison that he was claiming the land as his homestead; that prior to decedent's death, considerable correspondence was had between appellant as attorney for decedent and the vendor's executor in an effort to settle the controversy. The answer admits that decedent, shortly before his death, requested appellant to obtain the land for decedent's wife;

that after decedent's death, appellant did inform the vendor's heirs that the family of decedent was in position to settle the pending suit and directed the vendor's heirs to prepare the quitclaim deed to the widow for $800; and that the quitclaim deed to the widow was executed, delivered, and recorded as alleged in the bill. The answer further avers that after appellant had paid $800 for the land on behalf of the widow, she informed appellant that she and the children could no longer live on the land, that she could not repay the $800, and that she wanted to convey the land to appellant for the amount he had spent; that the widow did not pay said sum to the vendor's heirs but that appellant, out of his personal funds, paid it for the widow; that the vendor's heirs never admitted decedent had a contract to purchase but, on the contrary, stated that the land was rented to decedent and that payments made by decedent were payments on notes or for rent; that appellant, before decedent died, informed him that he could not maintain the bill for specific performance and likewise so informed the widow; that the agreement made between appellant and vendor's heirs was an agreement to purchase and could not be carried out because of decedent's death; that after decedent's death, the agreement was between vendor's heirs and the widow; that no consideration to purchase the land was furnished by anyone during decedent's lifetime. The answer avers that the children of decedent had no interest, that the widow had a good and lawful right to convey, that she was not trustee for the children, that she did execute the warranty deed, and that appellant furnished the entire price for the land.

The witnesses were heard ore tenus by the chancellor. We set out tendencies of the evidence which we consider pertinent to the questions now before us.

The suit for specific performance was dismissed November 23, 1955, for want of prosecution. As to the alleged contract to purchase, the only evidence going to prove the existence of that contract was as follows: It was shown that Luther Madison had lived on the land seven years prior to his death, had asserted that it was his homestead, and employed appellant to file the aforesaid bill of complaint. The father of Luther Madison testified that the vendor and Luther Madison had signed a contract which was witnessed by the father and another witness who had since died, but the father had never seen the contract since and it was not found. The father did not know how much Luther Madison had paid or had not paid. The widow testified, inter alia, that she went with her husband to the heirs of vendor to make the last payment of $60 due on the alleged contract, but vendor's heirs refused to accept the payment. She had never seen the contract. Eight receipts are in evidence showing payment of money by Luther Madison in sums ranging from $4.50 to $20 at various dates from 1946 to 1948. Only one of the receipts shows any payment to the vendor and that one recites receipt of $20 "on truck note." As we read the record, the foregoing fairly states the evidence having any tendency to prove the contract. We note further that the vendor's heirs were made respondents to the original bill in the instant case, and their demurrer to the original bill was sustained. In the amended bill the heirs of vendor are not made respondents and no relief is sought against them and none was granted. We do not think the evidence shows that Madison ever paid anything on the purchase price, and we do not understand that any party now contends to the contrary.

The widow testified that she had signed a paper in appellant's office at his request but appellant did not tell her what it was and she did not ask. She denied that she had given appellant a deed to the land or had told appellant to pay $800 for the place for her or had told him she could not raise $800 and was going to convey the land to appellant. She also said that since her husband died she had not paid any money to anybody on the land, that at time of husband's death neither the widow nor any of

the children had $800; that the whole family was "on Welfare"; and that to her knowledge, neither she nor her husband had paid anything to vendor's heirs for the land after appellant "was negotiating to get it." Widow and children moved off the land after Madison was in hospital where he died. Removal was a short time before his death.

The notary who took the widow's acknowledgment identified the signature on the certificate of acknowledgment as being that of the witness, but had no independent recollection of the occasion when acknowledgment was taken and did not know the widow. The notary testified that as a rule in taking acknowledgments she asked the signer of the instrument to be acknowledged whether the signer knew the contents and signed voluntarily and that she did not certify any acknowledgment unless the signer was present.

Appellant's secretary, sister of the notary, testified that the widow and appellant had a conversation relative to the land in suit, that the letter to the vendor's attorney was written, that the deed to the widow arrived at the bank, to be delivered on payment of $800, and remained at the bank some time; that the widow finally said she could not raise the money and wanted appellant to buy the land and that she, the widow, would pay him back; that the widow did not pay him back and deeded the land to appellant for that reason. The secretary said that she typed the deed from widow to appellant, that the widow came to the office and signed it, that she, the secretary, called the notary and saw the widow sign in notary's presence, that the notary asked the widow if she knew what she was doing and if she signed "without threats and so forth"; that the consideration was $800; the value of the land was not discussed, there was no talk about minor children, and the deed was read to the widow.

Appellant testified that: He filed the aforementioned suit for Luther Madison and investigated the case, went to Berry and Fayette, but could find no evidence where the Madisons had ever bought the land; vendor's heir denied there was a contract to purchase and said Madison was renting the land; appellant informed Madison of result of investigation and that he could not win suit; appellant negotiated for the land; decedent told appellant to buy land for widow and appellant notified vendor's attorney to make deed to widow; deed was sent from Berry to bank at Jasper, in November, 1954; on several occasions thereafter, appellant notified widow deed was at bank but she was unable to raise the money and requested appellant to put up the money; on February 2, 1955, he paid the money and picked up the deed; in March, 1955, widow told appellant she could not raise the money and would deed the land to appellant; appellant owns two or three thousand adjoining acres; value of land in suit would not have been $800; appellant had not cut timber or torn down buildings; he negotiated for buying the land for the widow; he told Luther Madison that he, appellant, would do what he could for the widow; appellant fed her and the children; he bought the land for the widow; she saw the deed to her and told him to keep it; the only evidence as to the alleged contract to purchase was the receipts. A draft on Carrie Madison, the widow, dated November 8, 1954, sent to the bank at Jasper together with the deed to the widow; also appellant's check for $800 dated "2 – 2 1955," bearing notation:

"For Payment of Luther
    Madison land to Bank of Berry
    Cashier Check for 800.00
    # 49180";

and also cashier's check from the Jasper bank to the bank at Berry dated February 2, 1955, are all in evidence. Appellant testified that the rental value of sixty acres of land in the area in question is nothing, that he farmed the land in suit "a little last year," had 11 acres in cotton, that the place had a cotton allotment of two-tenths of an acre, and that he had lost money

farming the land every year since he obtained it.

The husband of one daughter of Madison testified that the land in suit was about 60 acres, with 40 acres in level field, the rest in saplings; the barn was gone, the crib torn down, the chimney was down and the rocks hauled off, he did not know who got the barn, the land was worth about $1,800; he had never bought or sold any land, and never owned any.

One daughter of Madison testified that last summer she and her mother, the widow, went to the place. A man and his wife were there chopping cotton. The widow got a plank at the barn to make a table and the man told her to put it down and that the place belonged to appellant.

On August 27, 1957, the court rendered a decree to the effect that appellant holds the land in trust for the eleven children of Luther Madison, deceased, and his widow; that said trust is subject to a lien in favor of appellant for $800 paid by appellant for the conveyance to the widow; that complainants are not entitled to set-off against appellant for waste or profits and appellant is not entitled to credit for taxes paid on the land; that the heirs and widow of Luther Madison are allowed sixty days from date of decree to pay to the register $800 to satisfy the lien; that if said sum is not paid, then the heirs and widow may obtain a purchaser who will pay a sum in excess of $800; "and if either of the above conditions are met, then a further decree of this court will be rendered divesting the legal title to said lands from the said Reuben Newton into the heirs of the said Luther Madison, or conveying said lands to such purchaser as may be secured"; and that if neither condition is met within sixty days further decree will be rendered determining the value of the land to be $800 and vesting title in appellant.

On October 24, 1957, the court rendered a second decree reciting that complainants have obtained a purchaser, Clyde Nelson, who has deposited $1,025 with the register.

The second decree approved the purchase by Nelson; directed the register to execute deed to Nelson conveying to him the title of all parties to the suit and vested title in him; taxed the costs; ordered payment of $800 to appellant; and directed distribution of the balance of the purchase money to the widow and heirs of Madison.

### On Appeal.

Appellant's four assignments of error, all directed against the second decree, assert that it is erroneous because, ex mero motu, it altered the first decree, is repugnant to and inconsistent with the first decree, is not supported by any evidence or pleading, and is contrary to law because it divested title out of all the parties to this suit, including appellant, and vested title in a stranger before the expiration of the sixty days "fixed by decree" of August 27, 1957. We are of opinion that appellant's assignments of error are not well taken.

In the first place, it is not clear to us that the second decree either altered or is repugnant to or inconsistent with the first decree. The first decree allowed the heirs and widow sixty days within which to pay off the lien or find a purchaser who would pay for the land a price greater than the amount of the lien. The second decree recites that complainants have found such a purchaser. Appellant does not controvert this recital. The first decree was not altered as we see it. The rights of appellant in both decrees are the same, that is, a right to $800. The second decree orders $800 paid to appellant. He makes no objection to the amount allowed in the first decree and he gets that same amount in the second decree, less costs taxed against him, and he does not argue that the costs are erroneously taxed.

Appellant argues that the second decree violates Equity Rule 65, Code 1940, Tit. 7 Appendix, which forbids alteration of a final decree after thirty days except to correct clerical errors unless jurisdiction is

invoked by bill of review and except on application for rehearing.

In Sisson v. Leonard, 243 Ala. 546, 11 So.2d 144, cited by appellant, this court held void a substituted decree entered by an amendment nunc pro tunc more than thirty days after a former decree where the substituted decree was "of a different nature and to a substantially different effect." The second decree here complained of is not of a nature or to an effect different from that of the first decree. The second decree here perfects the disposition of the cause in accord with the first decree and, in fact, is expressly contemplated by the first decree.

Equity decrees may be partly final and partly interlocutory. A decree which ascertains and declares the rights of the parties and settles the equities is a final decree, although it provides for further proceedings under the direction of the court to carry the decree into effect. If there is a decree directing further proceedings under the direction of the court in order to make the final decree effective, such decree is interlocutory and remains within the control of the court because as to such decree and further proceedings thereunder the cause remains in fieri. The thirty-day limit of § 119, Title 13, Code 1940, applies only to final decrees. Ex parte Sparks, 254 Ala. 595, 597, 49 So.2d 296. This court has said that the thirty-day limit of § 6636, Code 1923, applies only to final decrees. Carter v. Mitchell, 225 Ala. 287, 294, 142 So. 514. Section 6636, Code 1923, and Equity Rule 65 are closely alike, and we are of opinion that the thirty-day limit of Equity Rule 65 does not forbid the rendition of a second decree which is in accord with and makes effective the first decree.

While the first decree in the instant case determined the rights of the parties in the subject matter of the suit and may well be a final decree in the sense that it would support an appeal, Ex parte Elyton Land Co., 104 Ala. 88, 15 So. 939, it did not entirely dispose of the cause, leaving nothing further for the court to do. The first decree expressly stated that one or the other of two further decrees would be rendered depending on the meeting of or failure to meet the conditions prescribed. In that state of the record, we are not persuaded that the court was without jurisdiction to render the second decree or that it was infected with error prejudicial to any right of appellant.

### Cross-Assignments.

The cross-assignments of error argued assert that the court erred in allowing appellant a lien on the land for $800. Appellees summarize their argument as follows:

"It is true that this Court, in many cases involving the cancellation of deeds or other instruments, has stated that the defendant held a lien upon the property involved, and has ordered the plaintiff or plaintiffs to restore unto the defendant certain monies, those cases are different from our instant case, in that, in the case before the Court, no consideration passed from the Appellant to the owners of the property, i. e., the heirs of Luther Madison. These heirs were not fraudulently induced to enter into a contract, or fraudulently induced to convey the property, these heirs, the true owners, knew nothing of any of these transactions.

" * * * The evidence for the Appellees showed that all these transactions occurred in the privacy of an attorney's office, and they showed that any money expended by the Appellant was expended in a scheme to acquire these lands, without the knowledge of its owners.

"Even if we assume that the entire testimony of the Appellant and his witnesses is true, the presumption of fraud and undue influence attending transactions between attorney and client have not in any manner been rebutted by the Appellant. As a matter of fact Appellant's testimony showed that the widow was the only person consulted or in-

-volved in any manner with the Appellant acquiring these lands. A matter which the widow vehe*n*ently denies; therefore we are compelled to believe, and the evidence for Appellees clearly shows that the Appellant entered into a conscious and a deliberate fraud or scheme to acquire the title of the property of his late client from its rightful owners, Luther Madison's heirs and widow."

■ It may be that from the evidence offered by appellees the court could have drawn the inferences insisted on by appellees, but, there was other evidence to the contrary. The testimony was heard ore tenus by the trial judge and unless his decree is palpably wrong it will not be here disturbed. Marks v. Marks, 254 Ala. 612, 49 So.2d 166.

Appellees appear to concede that there was evidence to support a finding that appellant was not acting in pursuit of a fraudulent scheme. Appellees state in brief:

"Let us consider first that the Appellant was truthful in giving his evidence; that he acted in good faith throughout the entire transaction. This then would be the evidence which we would consider. The Appellant was an attorney at law settling his deceased client's law suit for the deceased client's widow. He advanced the sum of $800.00 to settle the suit. The widow, Carrie Madison, was unable to repay the Appellant. She then made a deed to him, the consideration of which was the cancellation of her indebtedness to him. Clearly, here is a conveyance made for a past due indebtedness, and the law is precise on this point that where a conveyance is set aside and the consideration for the conveyance was a past due indebtedness, the maxim that he who seeks equity must do equity does not apply, and restoration will not be ordered. Jenkins v. Jonas Schwab Co., 35 So.

649, 138 Ala. 664; Walker v. Baker, 74 So. 368, 199 Ala. 310; Groover v. Darden, 68 So.2d 28, 259 Ala. 607.

"In arriving at the above conclusion we have considered only the evidence from the Appellant. * * *"

The chancellor who saw and heard the witnesses had the duty to decide which testimony was worthy of belief. From the evidence, he could reach the conclusions of fact quoted from appellees' brief, but on those facts the chancellor was not bound to reach the conclusion of law for which appellees contend.

In Jenkins v. Jonas Schwab Co. [138 Ala. 664, 35 So. 651], supra, this court held that payment of the debt secured by an invalid mortgage was not a condition precedent to the right to cancellation if the consideration for the mortgage were a debt past due, but also said that if "on the faith of the mortgage complainants obtained money or other things of value, they are not entitled to cancellation of that [mortgage] except on making compensation for what was so obtained," citing Hayes v. Southern Home Building & Loan Ass'n, 124 Ala. 663, 26 So. 527, which case and Walker v. Baker, supra, are to like effect.

Groover v. Darden, supra, was a suit to cancel a deed executed in the mistaken belief that it was a mortgage and obtained for a grossly inadequate consideration through the fraud of the grantee who stood in confidential relation to the grantors. This court, on appeal, held that the deed was due to be cancelled and that the grantors should not be required, as a condition to relief, to repay that part of the consideration which was a previously existing debt, but also expressly held that grantors be required, as a condition to cancellation, to pay the $500 advanced by grantee at the time of execution of the instrument sought to be cancelled.

■ The rule of the cited cases, that payment of the debt is not a condition to

**452**

cancellation where the consideration is a past due indebtedness, does not, as we view it, bar repayment to appellant in the instant case. In Lauderdale v. Peace Baptist Church, 246 Ala. 178, 19 So.2d 538, where pastor of a church borrowed money and purchased land in the name of the church, this court held that the pastor stood in confidential relation to the church; that the usual presumption that he who supplies the purchase money intends the purchase to be for his own benefit and not for another in whose name title is taken was overcome; that the evidence sustained the conclusion that the purchase was for the benefit of the church, not the pastor; and that the prayer of pastor's heirs to establish a resulting trust in their favor was due to be denied. The court said, however, that under the circumstances of that case, it would be inequitable for the church to reap the benefit of payments for the property made by the pastor without indemnifying his estate, and ordered that a lien, subject to lien of the prior lender, be decreed in favor of the pastor's estate for the amount paid on the debt by the pastor out of his own funds.

In Verner v. Mosely, 221 Ala. 36, 127 So. 527, this court affirmed a decree wherein the trial court cancelled and set aside a conveyance from a client to her attorney. This court held that the attorney had failed to meet the burden of proof resting on him to overcome the presumption of undue influence. The decree which this court affirmed, however, required the client "to do equity by repaying the purchase price with interest." 221 Ala. 38, 127 So. 528.

In the case at bar, it would be inequitable to allow appellees to retain the benefit of the payment made by appellant without indemnifying him. Here the equity in the suit property awarded to appellees, and indeed, all the interest which appellees in anywise possess in the suit property, came to them at the time appellant advanced $800 to pay the consideration for the deed to the widow. For aught that appears, until appellant advanced the money, nei-

ther widow nor heirs had any title, legal or equitable, to the land in suit. According to the testimony offered by appellant, the widow requested appellant to advance the money and she promised to repay it. It is true that the debt already existed, and probably was past due, at the time the widow executed the deed to appellant, but the making of the loan by appellant and the acquisition of interest in the land by appellees were simultaneous. The rights of the heirs are derived by and through the deed to the widow. Appellant furnished the consideration for that deed. On the faith of the widow's promise to pay, appellant made the loan of money used to buy for the benefit of appellees the property they now claim, and it is that loan and that debt which the decree ordered paid. We are of opinion that the decree was not in error in that respect.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.