The trial court's February 8, 2001, judgment fully adjudicated the merits of the plaintiffs' underlying substantive claims in this case and determined that the defendants should be liable to the plaintiffs for attorney fees; the trial court retained jurisdiction only to determine the amount of those fees. I therefore begin by noting that the Supreme Court's August 31, 2001,[2] order remanding this case to the trial court was based on the Supreme Court's concern that the trial court's order was not final because "the claims stated against Chemical Bank and Advanta Mortgage Corporation ha[d] not been adjudicated." There was no mention by the Supreme Court of any concern as to the lack of finality of the trial court's February 8, 2001, order due to the trial court's failure to have decided the amount of attorney fees to be awarded. To the contrary, the Supreme Court gave instruction to the trial court simply to make "a determination as to whether to . . . make the interlocutory order of February 8, 2001, in favor of the plaintiffs and against Goldome Credit Corporation, a final judgment pursuant to the provisions of Rule 54(b), Ala.R.Civ.P." (Emphasis added.)
Because the trial court did not respond to the Supreme Court's remand order within the 14 days provided in its order, the Supreme Court dismissed the appeal. However, on November 25, 2002, the trial court entered an order stating, in part:
 "Upon consideration of the Alabama Supreme Court's order of August 31, 2001, . . . and upon review of the record in this case, it appears to the Court that its February 8, 2001, judgment should be made final as to the liability of Defendant Goldome Credit Corporation pursuant to Rule 54(b), Alabama Rules of Civil Procedure."
The trial court again retained jurisdiction of the issue of the amount of attorney fees to be awarded to plaintiffs' counsel.
I believe the Supreme Court's remand order of August 31, 2001, is instructive. The implication of that order is that this court should now reach the merits of this appeal. Ultimately, however, my conclusion that we should proceed at this juncture to reach the merits of this appeal, while corroborated by the Supreme Court's remand order, is based on fundamental principles regarding the relationship between attorney-fee awards and judgments on the merits of substantive claims.
The case relied upon in the main opinion, James v. Alabama Coalitionfor Equity, Inc., 713 So.2d 937 (Ala. 1997), is distinguishable from the present case. If anything, portions of the James opinion support the conclusion that the trial court's November 25, 2002, order is a final, appealable judgment.
In contrast to the present case, the only claim involved in James was aclaim for attorney fees. On March 31, 1993, the trial court in James
entered its judgment on the merits of the plaintiffs' substantive claims in what the Supreme Court's opinion refers to as the "Liability Phase" of that case. On June 9, 1993, the trial court certified its judgment on the plaintiffs' substantive claims as final pursuant to Rule 54(b). On the same day, the trial *Page 1151 
court entered a separate order stating that it was awarding attorney fees to the plaintiffs, but reserving the issue of the amount of those fees. The trial court also purported to certify this attorney-fee order as a separate, final judgment pursuant to Rule 54(b). No appeal was taken from any of the trial court's orders.
On November 19, 1996, the trial court entered an order setting the amount of attorney fees to be awarded to the plaintiffs' counsel for the Liability Phase of the lawsuit.[3] On appeal, the Supreme Court remanded the case to the trial court for it to certify the November 19, 1996, order awarding attorney fees as a separate, final judgment pursuant to Rule 54(b). It was only this separate, final judgment as to the plaintiffs' attorney-fee claim that was the subject of the appeal inJames.
The James Court first addressed the issue whether the trial court's original June 9, 1993, attorney-fee order (finding the defendants liable for the plaintiffs' attorney fees, but not setting the amount of those fees) had been properly certified by the trial court, on its own initiative, as a final judgment pursuant to Rule 54(b). The Supreme Court concluded that it had not been; therefore, the Supreme Court concluded that the order had not been appealable at the time it was entered. As the Supreme Court explained:
 "Not every order has the element of finality necessary to trigger the application of Rule 54(b). Tanner v. Alabama Power Co., 617 So.2d 656, 656 (Ala. 1993) (Rule 54(b) `confers appellate jurisdiction over an order of judgment only where the trial court "has completely disposed of one of a number of claims, or one of multiple parties."')."
James, 713 So.2d at 941 (some emphasis in Tanner; some emphasis added).
Unlike the single claim on appeal in James, which was not completely disposed of prior to that appeal, and therefore was not appropriate for Rule 54(b) treatment, the present case involves an appeal of a judgment "completely disposing of . . . a number of claims," namely, the plaintiffs' substantive claims. The question of finality of the trial court's judgment would not even be at issue in this case in light of the trial court's Rule 54(b) certification of its judgment if that judgment did not also contain a reference to the fact that the trial court was awarding attorney fees, but not yet setting the amount of those fees.
The James Court's discussion of the judgment on appeal in that case, however, reviews fundamental and well-established principles that, in and of themselves, should dispel any concern that the trial court's inclusion in its judgment in the present case of a statement that it was awarding attorney fees prevents that judgment from being considered final as to the substantive claims that are fully addressed therein. I particularly refer to the Supreme Court's discussion in James of "a related argument" made by certain defendants to the effect that even the trial court's March 31, 1993, Liability Phase order was not properly certifiable under Rule 54(b). 713 So.2d at 942. The Supreme Court reasoned that the 1993 *Page 1152 
Liability Phase order of the trial court was properly certifiable as a Rule 54(b) final judgment, noting, among other things, as follows:
 "This Public School Equity Funding Case is qualitatively different from these `damages' cases and is subject to the well-established rule stated in Ex parte Elyton Land Co., 104 Ala. 88, 91, 15 So. 939, 940 (1894):
 "`The test of the finality of a decree to support an appeal is not whether the cause remains in fieri, in some respects, in the court of chancery, awaiting further proceedings, necessary to entitle the parties to the full measure of the rights it has been declared they have; but whether the decree which has been rendered, ascertains and declares these rights — if these are ascertained and adjudged, the decree is final and will support an appeal.'
 "(Emphasis added [in James].) The question in Elyton Land Co. was whether a decree entered in favor of Rebecca Denny, who had sought an assignment of her dower rights in real estate held by her late husband, was final and appealable. 104 Ala. at 91, 15 So. at 939-40. The Court noted that a number of issues remained to be determined, stating:
 "`Whether dower should be assigned by metes and bounds; or whether compensation should be decreed in lieu of such assignment; which of the defendants should be charged with the payment of rents, for what parts of the lands, and what portions; whether the rents should be computed on the basis of the enhanced value of the lands because of the improvements, or without regard to such improvements, were incidents, consequential to the decree the court had rendered, adjudging that the complainant was entitled to be endowed of the lands; essential to the execution of that decree, and to confer upon her the possession and enjoyment of the rights, the decree adjudged she was entitled to have and enjoy.'
 "104 Ala. at 91-92, 15 So. at 940 (emphasis added [in James]). However, the Court declared that the essential facts, the finding of which was necessary to the entry of a final decree, were: `the marriage, the seisin of the husband during coverture, his death and the possession of the lands, claiming to be tenants of the freehold, by the defendants charged to be in possession and so claiming.' 104 Ala. at 90, 15 So. at 940. It explained: `These facts constitute the equity of the case; they embrace the substantial merits of the controversy; from them arise the material issues of fact and of law, upon which the legal and equitable rights of the parties depend.' Id. Concluding that the `decree ascertaine[d] and declare[d] the concurrence and coexistence of [the essential] facts; and from them deduce[d] the legal conclusion,' the Court held that the decree was final and appealable. 104 Ala. at 90, 91, 15 So. at 940.
 ". . . In Newton[v. Ware, 271 Ala. 444, 124 So.2d 664
(1960)], we said:
 "`Equity decrees may be partly final and partly interlocutory. A decree which ascertains and declares the rights of the parties and settles the equities is a final decree, although it provides for further proceedings under the direction of the court in order to carry the decree into effect. If there is a decree directing further proceedings under the direction of the court in order to make the final decree effective, such decree is interlocutory and remains within the control *Page 1153 
of the court because as to such decree and further proceedings thereunder the cause remains in fieri.'
 "271 Ala. at 450, 124 So.2d at 670, quoted in Taylor[v. Taylor, 398 So.2d 267 (Ala. 1981),] and Sexton[v. Sexton, 280 Ala. 479, 195 So.2d 531
(1967)].
 "Even more significantly from the point of view of this case, `[i]n equity cases there can be more than one final judgment from which an appeal may be taken.' Norris v. Norris, 406 So.2d 946, 948 (Ala.Civ.App. 1981) (emphasis added [in James]); see also Chadwick v. Town of Hammondville, 270 Ala. 618, 621, 120 So.2d 899, 902 (1960). This is so because `there may remain . . . other matters in which the equities have not been settled or proceedings necessary to enforce the judgment previously entered. A court has inherent power to issue such orders or process as necessary to render its judgment effective.' 406 So.2d at 948; Monroe v. Monroe, 356 So.2d 196 (Ala.Civ.App. 1978)."
James, 713 So.2d at 944-45 (emphasis added).
In addition to the above-discussed principles, it is important to note that, ultimately, the James Court relied principally on two cases: SidagAktiengesellschaft v. Smoked Foods Products Co., 813 F.2d 81 (5th Cir. 1987), and Fort v. Roadway Express, Inc., 746 F.2d 744, 747 (11th Cir. 1984). As in James, the only claim presented for consideration by the appellate court in Sidag and in Fort was a claim for attorney fees; the finality, for purposes of appeal, of the trial court's judgments on the underlying substantive claims in both Sidag and Fort was not at issue in those appeals. Thus, like the James case itself, the two principle cases relied upon in James are distinguishable from the present case.
The opinion of the Eleventh Circuit Court of Appeals in Fort is particularly instructive. The Court of Appeals recognized the "long-standing rule that a determination as to liability, prior to a determination on the issue of damages or other relief requested, is not a final appealable judgment," 746 F.2d at 747, and, therefore, it concluded that the trial court's "order finding [the plaintiff] liable for fees without determining the amount thereof [was] not a final appealable judgment with regard to the issue of attorney's fees," 746 F.2d at 747 (emphasis added), but that the trial court "contemplated further proceedings before entering a final judgment on the issue of attorney'sfees," 746 F.2d at 747. In so holding, the Court of Appeals specifically "distinguished" the case before it from
 "the question of whether an order resolving all of the issues in a case except the award or amount of attorney's fees is a final appealable judgment on the merit of the substantive issue. In McQurter v. City of Atlanta, 724 F.2d 881, 882 (11th Cir. 1984), we held that whether such an order is final depends on whether the issue of attorney's fees is `collateral to an action' or `an integral part of the merits of the case and the scope of relief.' (quoting Holmes v. J. Ray McDermott Co., 682 F.2d 1143, 1146 (5th Cir. 1982), cert. denied, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983)). See also C.I.T. Corp. v. Nelson, 743 F.2d 774, 775 (11th Cir. 1984)."
746 F.2d at 747 n. 6. Because it is that latter "question," as identified by the Eleventh Circuit Court of Appeals in Fort, that is at issue in the present case — i.e., "whether an order resolving all of the issues in a case[4] except the award or *Page 1154 
amount of attorney's fees is a final appealable judgment on the merit of the substantive issue" — neither Fort, nor Sidag, nor James supports the conclusion that the trial court's judgment presented for our consideration in the present case is not a final appealable judgment on the merits of the substantive issues addressed therein.
Moreover, the holding in McQurter v. City of Atlanta, 724 F.2d 881, 882
(11th Cir. 1984), relied upon in Fort has now been abrogated by the United States Supreme Court's decision in Budinich v. Becton Dickinson Co., 486 U.S. 196 (1988), which embraces a uniform, "bright-line" rule. Under this bright-line rule, an unresolved issue of attorney fees does not prevent a judgment on the merits from being final and immediately appealable.
Budinich involved a judgment in favor of a petitioner who sought employment compensation under Colorado state law in the United States District Court for the District of Colorado. The trial court awarded a verdict of $5,000 to the petitioner, considerably less than had been sought. The petitioner filed a postjudgment motion for a new trial, along with a motion for attorney fees. The trial court entered an order denying the petitioner's new-trial motion, finding that the petitioner was entitled to attorney fees, and reserving a ruling on the amount of those fees pending receipt of further briefing and documentation. As such, the case was postured for all material purposes identically to the case now before this court. See 486 U.S. at 197-98.
The question before the Supreme Court in Budinich was also the same as the question before this court: "[W]hether a decision on the merits is a `final decision' . . . when the recoverability or amount of attorney's fees for the litigation remains to be determined." 486 U.S. at 199. Among other things, the Supreme Court reasoned:
 "As a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action. At common law, attorney's fees were regarded as an element of `costs' awarded to the prevailing party, see 10 C. Wright, A. Miller, M. Kane, Federal Practice and Procedure: Civil § 2665 (1983), which are not generally treated as part of the merits [of the] judgment, cf. Fed. Rule Civ. Proc. 58 (`Entry of the judgment shall not be delayed for the taxing of costs'). Many federal statutes providing for attorney's fees continue to specify that they are to be taxed and collected as `costs,' see Marek v. Chesny, 473 U.S. 1, 43-48 (1985) (Brennan, J., dissenting) (citing 63 such statutes) — as does, in fact, the Colorado statute at issue here."
Budinich, 486 U.S. at 200-01. Noting that "`[t]he considerations that determine finality are not abstractions but have reference to very real interests,'" 486 U.S. at 201 (quoting Republic Natural Gas Co. v.Oklahoma, 334 U.S. 62, 69 (1948)), the Supreme Court proceeded to reason that an otherwise final decision that *Page 1155 
leaves open the amount of attorney fees to be awarded to one party or another constitutes a "final decision" for purposes of appeal.[5]
The Alabama Supreme Court recently indicated that Alabama law follows the holding in Budinich, noting that "a decision on the merits disposing of all claims is a final decision from which an appeal must be timely taken, whether [or not] a request for attorney fees remains for adjudication." State Bd. of Educ. v. Waldrop, 840 So.2d 893, 899 (Ala. 2002) (citing Budinich).[6]
The main opinion expresses concern over the potential for "piecemeal" appeals to two different appellate courts in the event this court exercises jurisdiction over this appeal and, hereafter, the trial court makes an award of attorney fees within the exclusive appellate jurisdiction of our Supreme Court. First and foremost, in response to this concern, I would note that the legal principles that I believe require us to decide this case on its merits at this time are sound and are binding upon us. We are addressing in this case fundamental issues as to the finality of judgments. It is therefore the established legal principles discussed above that, in my opinion, must govern our holding.[7]
Second, the potential for "piecemeal" appeals already exists and is a necessary result of the manner in which the Legislature has chosen to divide the jurisdiction of appeals in civil cases between this court and our Supreme Court. For example, either this court or our Supreme Court could, in a given case, remand a cause for a new trial or for the entry of a new judgment. If that remand results in a judgment not within the exclusive appellate jurisdiction of the court ordering the remand, an appeal of that judgment necessarily must be taken to the other appellate court. Another example would be a trial court certifying as final under Rule 54(b) a judgment within the exclusive appellate jurisdiction of either this court or our Supreme Court, only to subsequently enter a judgment within the exclusive appellate jurisdiction of the other of these two courts as to the remaining claims in the case. I do not find such results particularly *Page 1156 
troubling, and I certainly do not find them justification for not applying the fundamental rules of finality of judgments. In any event, such results are the result of legislative action, which this court is not free to address. It may be noted, however, that in any given case where our Supreme Court is confronted with an appeal within its appellate jurisdiction in a case in which some earlier judgment in the case was considered by this court, the Supreme Court does have the authority to address any concern over judicial economy by deflecting the latter appeal to this court.
Accordingly, I must respectfully dissent from the decision of this court to dismiss the present appeal as not being from a final judgment.
CRAWLEY, J., concurs.
[2] The record reflects that this order was filed on September 6, 2001.
[3] Over three years passed between the "Liability Phase" judgment inJames and the eventual award of attorney fees relating thereto. The magnitude and nature of an ongoing case such as the James case, and the need for the trial court in such cases often to conduct what amounts to separate litigation over attorney fees and/or to address on more than one occasion during the course of such a case the issue of ongoing accrual of attorney fees, illustrates the practical necessity of allowing enforcement and appeal of the court's underlying substantive judgment to proceed as from a final judgment, rather than being postponed indefinitely pending litigation of the attorney-fee issue.
[4] Obviously, the trial court's November 25, 2002, order in the present case left the claims against defendants Chemical Bank and Advanta Mortgage Corporation unresolved. However, the trial court's November 25, 2002, order certifying its February 8, 2001, judgment as final pursuant to Rule 54(b) caused that judgment to take on the same finality as to Goldome, effective November 25, 2002, that it would have had if Goldome had been the only defendant in the case.
[5] The appeal in Budinich was made from a trial court to the Tenth Circuit Court of Appeals pursuant to 28 U.S.C. § 1291, the statute providing that federal courts of appeal generally have jurisdiction of appeals from final decisions of federal district courts.
[6] I do not agree with the main opinion's parenthetical characterization of our Supreme Court's analysis in Waldrop. I would first note that the Court began its discussion of the issue at hand by clearly and unequivocally "recognizing" that a decision on the merits disposing of all claims other than a request for attorney fees is final for purposes of appeal and citing Budinich, without any caveat, for this principle. Secondly, any hesitation by our Supreme Court, as alluded to in the main opinion's parenthetical description of the Waldrop Court's opinion, came later in the opinion in a discussion of the separate issue whether the fact that the order was final for purposes of appeal, and indeed was labeled as a "Final Order," actually deprived the trial court of jurisdiction to later rule on an attorney-fee request when it had not reserved that issue in its judgment. In the present case, the question of the trial court's jurisdiction to enter a subsequent order awarding attorney fees is not at issue; the trial court reserved the issue in the judgment from which the current appeal is taken.
[7] The only way to avoid "piecemeal" appeals in all cases where attorney-fee issues are raised would be to always prevent the execution and appeal of otherwise final judgments on the merits until such time as the trial court addresses the attorney-fee issue. I suggest the resulting delay in the execution of judgments, and the appeal of those judgments, would in many cases be at least as great a concern for the administration of justice as would be separate appeals to two different courts.