These appeals involve a parcel of real property and a business venture between the parties pursuant to which condominiums were built on that property. We dismiss the appeal in case number 1991484, and in case number 1001423, we vacate the trial court's order and remand that case to the trial court for further proceedings.
 I. Procedural History
In July 1993, Donald Peak purchased the parcel of property in Baldwin County that is at the center of this dispute. Later that year, Peak entered into an oral agreement with Paul Whitehurst, Jr., and Charles Chaney to construct condominium buildings on the property and then to sell the buildings. Peak agreed to finance the construction, and Whitehurst agreed to build the condominiums. Once all of the condominium units were sold, Peak was to be reimbursed for the amount he had advanced for the project, plus interest. Whitehurst was fully paid for the construction costs. Any profits from the sales of the condominiums were to be divided equally among Peak, Whitehurst, and Chaney. Chaney, a licensed real estate broker, agreed to list the properties for sale in exchange for his share of the profits and a 7% commission on each sale. Sometime in March 1997, Chaney transferred his interest in the project to Pleasure Isle Management, Inc. ("PIM"); that company is not licensed to sell real estate and therefore could not offer the condominium units for sale. *Page 613 
After the condominiums were built, several units remained unsold. Whitehurst and Peak orally agreed that Whitehurst (with PIM's help) would offer some of the unsold units for rent in exchange for a percentage of the rental fees (the parties disagree as to whether the agreed-to percentage was 10% or 20%). When Whitehurst failed to keep Peak informed of the finances of the condominium complex, Peak attempted to terminate the oral agreement pursuant to which Whitehurst was renting the unsold units. When Whitehurst continued to offer the units for rent, Peak sued Whitehurst and PIM, alleging that they were wrongfully engaging in leasing the unsold condominium units. The complaint sought an injunction prohibiting Whitehurst and PIM from engaging in the allegedly wrongful real-estate activities; he also sought a judgment declaring the rights of the parties pertaining to the property.
The crux of the dispute revolves around who owns the condominiums — Peak or a partnership consisting of Whitehurst, PIM (Chaney), and Peak. Peak claims that the entire property, including the condominium buildings, belongs solely to him and that, therefore, he could authorize Whitehurst and PIM to offer the units for rent and he could take away that authorization, at his sole discretion. Whitehurst and PIM claim that the first oral agreement with Peak created a partnership; that the partnership owned the condominium buildings; and that Peak did not have a controlling interest in the partnership. Thus, they argue, Peak could not prevent Whitehurst and PIM from offering the unsold properties for rent. Neither the agreement for the construction and sale of the condominiums nor the agreement for the rental of the units was in writing.
The trial judges[1] and then this Court issued a series of orders that unintentionally created more problems than they solved. Following the first hearing in the case and pursuant to an agreement between the parties, the trial judge, on January 18, 2000, issued an order allowing Whitehurst to continue offering the condominium units for rent and allowing him to receive a 10% commission on the rentals, but requiring him to deliver all rental fees to an accounting firm immediately upon receipt, to be held in an escrow account while the case was pending. The court also ordered Whitehurst to provide Peak, on a monthly basis, a full and complete accounting of the rentals. The court specifically said that it was making "no ruling one way or the other as to ownership of the property at this time." (R. 26.)
The court scheduled a hearing for March 13, 2000, to reexamine the amount of Whitehurst's commission under the order issued February 18. At that hearing, Whitehurst and PIM filed a motion to alter, amend, or vacate the February 18, 2000, order (R. 30). A lengthy hearing on the matter followed, at which extensive evidence was presented; the trial judge then denied the motion. She then issued an order from the bench, declaring that the February 18 order was not working, and, therefore, that "effective immediately, Mr. Whitehurst and Pleasure Isle Management will no longer have the authority to rent these units." (R. 121.) The trial judge stated that the evidence demonstrated that the partnership existed only for the purpose of sharing the profits on the sale of the condominiums. The judge stated that the renting of the condominium units was an entirely separate business arrangement, and had been done with Peak's permission, with the result that *Page 614 
Whitehurst and PIM had no right to any proceeds from the rental income. (R. 126.)
On March 17, 2000, Whitehurst and PIM filed a motion to alter, amend or vacate the trial court's order of March 13, 2000; on April 12, 2000, Peak filed a motion to strike or, in the alternative, to modify the lis pendens notice filed by Whitehurst and PIM in the Probate Court of Baldwin County on October 8, 1999; and on April 25, 2000, Whitehurst and PIM moved for a continuance. All of these motions were heard at a hearing on April 25, 2000. The trial judge denied the motion for a continuance; denied the motion to alter, amend, or vacate; and ordered the lis pendens notice stricken. Her order also allowed Peak to sell the remaining condominium units and made it clear that she believed her actions were authorized under the equitable powers of the court and that the issues involved were not appropriate subjects for jury consideration. (R. 152.)
Whitehurst and PIM appealed, seeking to have several rulings of the trial court overturned, the essential ones being: (1) the March 13 order holding that Whitehurst and PIM did not have authority to rent the condominiums; (2) the April 25 order denying the motion for a continuance; and (3) the April 25 order striking Whitehurst and PIM's notice of lis pendens. This is case number 1991484.
On January 26, 2001, this Court, recognizing that the orders appealed from were not final judgments that could support an appeal, issued an order in case number 1991484 directed to the trial court; that order stated:
 "It appearing to the Court that all claims have not been adjudicated, this cause is remanded to you for a determination as to whether to (1) make one of the interlocutory orders a final judgment pursuant to the provisions of Rule 54(b), Alabama Rules of Civil Procedure; (2) adjudicate the remaining claims, thus making the interlocutory orders final and appealable; or (3) take no action, in which event the appeal will be dismissed as from a nonfinal judgment.
 "If you elect to enter the 54(b) order, or any other final judgment, a supplemental record reflecting such action should be prepared and forwarded to this Court within fourteen (14) days from the date shown on this remand. The judgment will be considered final as of the date the new order is entered.
 "Failure to respond to this remand within fourteen (14) days will result in dismissal of the appeal as being from a nonfinal judgment."
On February 23, 2001, the trial judge to whom the case had been reassigned upon the original trial judge's election to another office, issued an order;[2] that order stated:
 "This matter having come before this court on remand from the Supreme Court of Alabama for clarification of the trial court's order in reference to ownership of the property, the court orders as follows:
 "1. [Defendants'][3] claim of interest or ownership in the real property at *Page 615 
 issue is DENIED and the court specifically finds the [Defendants have] no ownership interest in the property.
 "2. The court directs, pursuant to [Ala. R. Civ. P.] 54(b), an entry of Final Judgment as to this claim upon the express determination that there is no just reason for delay."
Whitehurst and PIM then appealed, seeking review of this February 23, 2001, order (case number 1001423).
 II. Analysis
It is obvious from this Court's January 26, 2001, order that the orders purportedly appealed from in case number 1991484 were not final and therefore not appealable. Even without the benefit of this Court's assessment in that order, a perusal of the trial record shows that every order issued by the original trial judge and appealed by Whitehurst and PIM was an interlocutory order, the product of hearings on each of the issues before the court. The original trial judge made it clear that she was unsure whether the March 13, 2000, order would work (R. 127) and that some matters might still have to be presented to a jury. (R. 153.) Thus, in order for any of those orders to become final, a Rule 54(b) certification was necessary. This Court requested such a certification on January 26, 2001.
The successor trial judge's response was not a Rule 54(b) certification, but was rather a final judgment on an issue other than the ones that were the subject of the appeal. None of the previously challenged orders directly dealt with who owned the property. In fact, the initial trial judge on more than one occasion studiously avoided answering this question. She did answer in the negative the question whether Whitehurst and PIM could continue to offer the condominium units on the property for rent, but her order on this separate, albeit related, issue was not made a final, appealable order by the successor trial judge's February 23, 2001, order.
Thus, the successor trial judge's order was a final judgment as to a wholly different matter; it was not a 54(b) certification of any of the previous orders. "Only a fully adjudicated whole claim against a party may be certified under Rule 54(b). . . . If a purported Rule 54(b) certification of a ruling respecting a claim is not authorized by that rule, the certification is wholly ineffective." James v. AlabamaCoalition for Equity, Inc., 713 So.2d 937, 942 (Ala. 1997) (citations omitted). Likewise, because none of the issues from the appeal in case number 1991484 have been certified as final, they remain interlocutory orders and "[a] nonfinal judgment will not support an appeal. . . ."Harper Sales Co. v. Brown, Stagner, Richardson, Inc., 742 So.2d 190, 192
(Ala.Civ.App. 1999). Thus, the appeal in case number 1991484 is due to be dismissed.
Even if we accepted the trial court's February 23, 2001, order as a proper 54(b) certification, because the appeals were consolidated and the issue of ownership is so clearly related to the other issues, which have yet to become final, we believe it best to vacate the trial court's order on the ownership issue and remand that case for further proceedings, in order to give the trial court an opportunity to make a comprehensive ruling on that issue.
1991484 — APPEAL DISMISSED.
1001423 — ORDER VACATED; REMANDED.
Houston, Lyons, Johnstone, and Woodall, JJ., concur.
[1] The trial judge to whom the case was originally assigned was elected to a another judicial office; the case was then reassigned to another circuit judge.
[2] The trial court did not respond within the 14 days set out in this Court's January 26 order. According to that order, the appeal in case number 1991484 should have been dismissed as not being from a final judgment. However, because that 14-day limit is not statutory and was presumably designed merely to hurry the trial court, we choose to overlook this failure to comply with that provision of the order.
[3] The trial judge's order read "Plaintiff" where we have substituted "Defendants." Both parties concede on appeal that the term "Plaintiff" in that order was a reference to Whitehurst and PIM, the defendants in this case. *Page 616