Cecil and Mary Ruth Taylor were divorced in 1975. As part of the divorce decree, the judge awarded Mary Ruth possession of the Taylors' forty acres during the minority of the Taylors' children. In July of 1979, Cecil petitioned the court to sell the property and divide the proceeds. The trial judge determined that Cecil was entitled to his requested relief and entered an order which provided in part:
 Therefore, it is the Order, Judgment and Decree of this Court, that the Clerk of the Court proceed to sell the above described lands at public outcry, to the highest bidder for cash, in front of the East door of the Courthouse at Fayette, Alabama, after having given notice of the time, place and terms of the sale with a description of the land to be sold, for thirty (30) days by advertising for four (4) successive weeks in the Marion County, The Journal Record, a newspaper of general circulation published in Marion County, Alabama.
 After such sale has been made, the Clerk will make and file in his office a written report of said sale, and that said report shall lie over in the Office of the Clerk for five days for exceptions and objections thereto by any party of interest, and after the expiration of said five days, the Clerk shall forward said report of sale together with the exceptions or objections, if any, which have been interposed to the Judge of said Court for consideration and decree.
Although not clear from the record, it appears that notice of the sale which was to be held on February 18, 1980, was published before the sale was stayed pending an April 28, 1980, hearing on Mary Ruth's motion for new trial. When her motion was denied at that hearing, the trial judge issued an order which provided, in part:
 It is further ORDERED, ADJUDGED AND DECREED, by this court that the Clerk is hereby ordered to advertise for sale the land, which is the subject of this law suit, for two (2) successive weeks in the Marion County, The Journal Record, a newspaper of general circulation published in Marion County, Alabama, and sell the same under the terms as heretofore specified by orders of this Court.
The notice of sale published in The Journal Record on May 1, 1980 and May 8, 1980, provided:
 Notice is hereby given that under the terms of the decree rendered in this cause on January 11, 1980, I, Pride Gann, Clerk of said Court, will sell at public auction to the highest bidder for cash, in front of the West door of the Courthouse in Marion County, Alabama, on Friday, May 9, 1980, during the legal hours of sale, said legal hour being 11:00 A.M., the following described real estate, to-wit:
[description of the property to be sold]
 Pride Gann Circuit Clerk 5-1,8
The sale was held on May 9, 1980, in accordance with the notice. Cecil Taylor was the successful bidder at a purchase *Page 269 
price of $42,000.00. The clerk of the circuit court filed the report of sale with trial judge on May 15, 1980, and he confirmed the sale after finding:
 And it appearing to the Court that said sale was fairly and legally conducted in accordance with law and the former decree of this Court and the price paid for said property not disproportionate to the real value of said real estate; that said Clerk's Report has lain over in his office for five (5) days for the filing objections or exceptions and none have been filed.
On June 26, 1980, Mary Ruth Taylor filed notice of appeal.
The question we must initially decide is Cecil's motion to dismiss this appeal. He contends that Mary Ruth's motion for new trial was denied on April 28, 1980, that the order denying same was entered on the docket on that date, and that the forty-two day period provided by Rule 4, ARAP, within which she could appeal expired on June 9, 1980. He argues that Mary Ruth's notice of appeal filed June 26, 1980, is untimely and therefore is due to be dismissed pursuant to Rule 2 (a), ARAP.
It is a well established rule that, with limited exceptions, an appeal will lie only from a final judgment which determines the issues before the court and ascertains and declares the rights of the parties involved. Kelley v. U.S.A. Oil Corp.,363 So.2d 758 (Ala. 1978); Alabama Public Service Commission v.Redwing Carriers, Inc., 281 Ala. 111, 199 So.2d 653 (1967). Decrees and orders entered in equity proceedings involving the sale and division of real property present an unusual situation, as this Court has previously noted:
 Equity decrees may be partly final and partly interlocutory. A decree which ascertains and declares the rights of the parties and settles the equities is a final decree, although it provides for further proceedings under the direction of the court in order to make the final decree effective, such decree is interlocutory and remains within the control of the court because as to such decree and further proceedings thereunder the cause remains in fieri. * * *
 This rule is strikingly illustrated in suits in equity to sell lands for division. When the court orders the land sold, that decree is final insofar as it will support an appeal. Three illustrations of our entertaining appeals from such decrees are Berry v. Berry, 266 Ala. 252, 95 So.2d 798; Coppett v. Monahan, 267 Ala. 572, 103 So.2d 169; Raper v. Belk, 276 Ala. 370, 162 So.2d 465. We have also held that the decree confirming the sale is the final decree in judicial proceedings for the sale of lands for division, Pettit v. Gibson, 201 Ala. 177, 77 So. 703; and that a sale of land for division among joint owners is not binding until confirmed by the court.
Sexton v. Sexton, 280 Ala. 479, 195 So.2d 531 (1967) (citations omitted).
It is clear from the notice of appeal that Mary Ruth does not appeal from the decree ordering the sale, but instead appeals from the decree confirming the sale. The forty-two day period for appeal from that decree, which was entered on May 15, 1980, would have expired on June 27, 1980. Mary Ruth's notice, filed on June 26, 1980, was therefore timely filed. Cecil's motion to dismiss the appeal is due to be denied.
The thrust of Mary Ruth's first argument is that the trial judge erred to reversal when he confirmed the sale which had not been preceded by the requisite publication. We disagree because we conclude that Mary Ruth may not now raise questions concerning the sufficiency of the notice of sale.
The rule which controls this case was established in Cargilev. Ragan, 65 Ala. 287 (1880). In that case the Cargiles' land was purchased by Cunningham at a judicial sale. Cunningham subsequently conveyed the land to the Ragans. Four years after the judicial sale to Cunningham had been confirmed by the court, Ragan sued to recover possession from the Cargiles. The trial judge refused to permit the Cargiles to attack, by way of objecting to its admission, the judicial sale and confirmation. In affirming the trial judge, this Court stated: *Page 270 
 The sale by the register was subject to confirmation by the court, and unti confirmation it was incomplete, conferring only inchoate rights. Its confirmation rested in the sound discretion of the court; and if irregularities intervened in making the sale — if it was made at an improper time or place — these irregularities were the subject of exception to its confirmation. If not made the subject of an exception, they are cured by confirmation; and afterwards it must be intended, that the court, in confirming, ascertained and adjudged that no injury had resulted from them. Certainly, a party to the suit, having full opportunity to except to the report of sale, because of them, and who was silent, can not be heard collaterally to question the validity of the sale, because of them. * * * * The appellant, when he had the opportunity of contesting, and when, if dissatisfied, he ought to have complained, acquiesced in the sale, and can not now question its validity.
65 Ala. at 292. This principle was recently applied by this Court in Conville v. Liveoak, 342 So.2d 1319 (Ala. 1977), andBaer v. Alco Land and Timber Company, Inc., 291 Ala. 640,285 So.2d 913 (1973). See also Harris v. Stevenson, 147 Ala. 537,41 So. 1008 (1906); In Re Burr Mfg. Supply Co., 217 F. 16 (2d Cir. 1914). Although these cases involved a collateral attack upon the validity of the sale, the principle remains the same when the attack is a direct one: a party to a judicial sale who has an opportunity to except to irregularities surrounding the sale, but who fails to raise the objection or exception may not later attack the validity of the sale in an appellate court of this State.
By virtue of the decree entered January 15, 1980, Mary Ruth had notice that the clerk's report of the sale would "lie over in the Office of the Clerk for five days [following the sale] for exceptions and objections thereto by any party of interest * *." The record is devoid of any evidence that Mary Ruth filed any objections or exceptions to the sufficiency of the publication which preceded the sale. She is therefore precluded from raising for the first time on appeal an issue she should have raised before.
In her second argument, Mary Ruth contends the trial judge erred to reversal when he failed to consider the provisions of Code 1975, § 35-6-100, which provides:
 Upon the filing of any petition for a sale for division of any property, real or personal, held by joint owners or tenants in common, the court shall provide for the purchase of the interest of the joint owners or tenants in common filing for the petition or any others named therein who agree to the sale by the other joint owners or tenants in common or any one of them. Provided that the joint owners or tenants in common interested in purchasing such interests shall notify the court of same not later than 10 days prior to the date set for trial of the case and shall be allowed to purchase whether default has been entered against them or not.
Mary Ruth apparently interprets this statute to require that, when a proceeding for sale for division has been instituted, a joint owner who desires to purchase his property at a judicial sale must give notice of same to the court at least ten days prior to trial. She contends Cecil failed to give such notice. Mary Ruth's interpretation of the statute is incorrect. It does not mandate that in every instance where a joint owner desires to purchase the property he must give notice of that desire. It merely provides a method of avoiding the necessity of a public sale by compelling the court to sell the property to a joint owner if the other owners consent to such sale. The fact that Cecil failed to invoke the provisions of § 35-6-100 in no way affects the validity of the sale.
For the foregoing reasons, the trial judge's decree confirming the sale is due to be affirmed.
MOTION TO DISMISS DENIED; AFFIRMED.
TORBERT, C.J. and FAULKNER, EMBRY and ADAMS, JJ., concur. *Page 271