DONALDSON, Judge.
Maria Vasa appeals from an order of the Jefferson Circuit Court ("the trial court") granting a motion filed by Vasundhara Vasa ("the former wife") pursuant to Rule 60(b), Ala. R. Civ. P., and vacating a judgment. We conclude that the order granting the Rule 60(b) motion was interlocutory and, thus, that we do not have jurisdiction over the appeal. Accordingly, we dismiss the appeal.
Background and Procedural History
Stanley Vasa ("the husband") and the former wife were divorced by a judgment of the trial court on May 27, 2005 ("the divorce judgment"). Pursuant to the divorce judgment, the husband was ordered to pay alimony to the former wife in the amount of $700 per month "until the death of either party, the [former wife]'s remarriage, or the commencement of her receipt of her portion of the [husband]'s pension (defined benefit) plan as provided for hereinbelow, whichever shall occur first." The divorce judgment provided that the former wife was to receive 50% of the husband's pension plan and 401(k) Employee Savings Plan. The divorce judgment ordered that the valuation of the former wife's interest in the husband's pension plan was to be determined as of the date of the judgment. The divorce judgment also provided that the husband was to
"provide, unencumbered, a policy of life insurance upon his life in the face amount of [$200,000] for so long as he has a periodic alimony obligation to the [former wife]. The [husband] shall name the [former wife] irrevocable beneficiary thereof and shall furnish a copy of said policy and beneficiary designation to the [former wife] within thirty (30) days of the date [of the divorce judgment] and at reasonable intervals thereafter."
In December 2010, the husband filed a complaint to modify the divorce judgment, *722 naming the former wife as the defendant. The proceeding was assigned case number DR-14-547.01 ("the .01 case"). The husband alleged that he had been diagnosed with a chronic illness and that he could no longer afford alimony payments of $700 per month to the former wife or the premium on the life-insurance policy and that based on that change in circumstances, the divorce judgment should be modified. The former wife answered and counterclaimed, seeking a finding of contempt against the husband for his failure to maintain the life-insurance policy and his failure to comply with other provisions of the divorce judgment.
On August 8, 2011, the trial court entered an order denying the husband's requested relief and finding him in contempt for failing to make alimony payments, failing to provide proof of life insurance to the former wife, and failing to comply with other portions of the divorce judgment.
On May 13, 2013, the former wife filed a "petition for rule nisi," seeking a finding of contempt against the husband. The proceeding was assigned case number DR-14-547.02 ("the .02 case"). The former wife alleged that the husband had failed to pay alimony to her as required by the divorce judgment and that he owed her $2,800 in unpaid alimony. The former wife also alleged that the husband no longer had life insurance as required by the divorce judgment.
On June 14, 2013, the former wife filed a motion in the .02 case seeking to join Maria Vasa, who was the husband's wife at the time of the motion, as a necessary party. In her motion, the former wife alleged that Maria was the attorney-in-fact for the former husband pursuant to a power of attorney, and that Maria had participated in the husband's decision to stop making payments on the life insurance policy required by the divorce judgment. The former wife further alleged that the husband was suffering from diminished mental capacity, and that Maria, in her capacity as the husband's attorney-in-fact, was a necessary party. On that same day, the former wife filed a motion for a temporary restraining order, seeking to enjoin the husband and Maria from "selling, hiding, transferring, damaging, disposing or gifting any of [the husband]'s assets, and [enjoining Maria] from leaving the country." The trial court set the former wife's motions for a hearing.
On June 26, 2013, the husband filed an answer and a petition to modify the divorce judgment in response to the former wife's petition for contempt. The husband alleged in his answer that all outstanding alimony payments had been paid to the former wife and that he would continue to make such payments "so long as required by the [divorce judgment] or until such time as [the trial court] directs otherwise." The husband alleged that "[t]he temporary failure to make current alimony payments was due to a statement in the Summary Plan Description for his Pension Plan that stated [the former wife] would begin receiving her pension benefits whenever [the husband] began receiving his." The husband also alleged that he continued to maintain a life-insurance policy, listing the former wife as a beneficiary, in an amount sufficient to comply with the divorce judgment.
In his "counter petition to modify or in the alternative for clarification of prior order," the husband alleged that he had remarried, that he suffered from a terminal illness, and that he had elected to retire early and begin receiving payments from his pension plan. The husband alleged that his current expenses exceeded his income and that he had filed a petition under Chapter 7 of the Bankruptcy Code and had received a discharge. The husband *723 attached to his counterpetition a copy of his budget as submitted to the bankruptcy court. The husband alleged that, based upon his age, the former wife's age, and the expected alimony owed to her under the divorce judgment, maintaining a $200,000 life-insurance policy was no longer justified. The husband alleged that a dispute existed "as to whether the life insurance policy which [he] is required to maintain until his alimony obligation ceases[ ] was intended to offset alimony arrearages that might exist at his death or were to compensate [the former wife] for future alimony payments." The husband alleged that if "[the former wife were] to receive both the life insurance benefits at [the husband]'s death and then commence receiving pension payments she would be unjustly enriched." The husband requested, as relief, that, on certain conditions, the trial court terminate his obligation to maintain a policy of life insurance and that the trial court clarify that the life-insurance provision of the divorce judgment was intended to serve only as security for any alimony arrearages owed to the former wife at the time of his death.
In response to the former wife's motion for a temporary restraining order, the husband alleged that, in January 2013, he had retired and had begun receiving his benefits under his pension plan. The husband alleged that, pursuant to the "plan summary" of his pension plan, the former wife was to begin receiving her portion of payments under the plan "by the time [his] benefit payments begin." The husband alleged that, based on the terms of the plan and the divorce judgment, the former wife should have begun receiving her benefit payments in January 2013 and that, as a result, his obligation to make alimony payments and maintain life insurance under the divorce judgment had terminated. The husband admitted that he had stopped paying alimony and maintaining the life-insurance policy but that, upon being notified of the .02 case, he had reinstated the life-insurance policy and had paid the outstanding alimony arrearage. The husband further alleged that, since his discharge in bankruptcy, he and Maria no longer had any assets to sell, hide, or transfer, thus, he said, making the temporary restraining order unnecessary.
After a hearing on July 9, 2013, the trial court entered an order stating, in pertinent part:
"1. That the [husband], anyone subject to his control, and [Maria] are hereby prohibited from selling, hiding, transferring, damaging, disposing, or gifting any of the [husband]'s assets.
"2. That [the former wife]'s Motion to Join Necessary Party is hereby GRANTED and [Maria] is hereby added as a third party in [the .02 case].
"3. All other requests are DENIED."
Maria filed an answer on July 30, 2013, adopting all of the husband's previous pleadings, including his claims against the former wife regarding the life insurance, and alleging that the husband no longer had an obligation to maintain life insurance for the benefit of the former wife or to make alimony payments.
On August 14, 2013, a suggestion of death of the husband was filed pursuant to Rule 25, Ala. R. Civ. P.[1]
On January 13, 2014, Maria (hereinafter referred to as "the widow") filed a motion to dismiss the .02 case. She argued that she had been joined as a party to the proceedings only to protect against a transfer of the husband's assets while the litigation was pending, that the husband *724 had died, and that the trial court "may have lost jurisdiction" after the husband's death. The trial court granted the widow's motion on January 16, 2014. The former wife filed a "motion for reconsideration" on January 20, 2014, asserting that the life insurance proceeds of the husband's policy were still at issue. The former wife argued that, by dismissing the case, the widow was now free to dispose of the life-insurance proceeds to which the former wife may have a claim pursuant to the divorce judgment. On February 10, 2014, the trial court granted the former wife's motion and reinstated the .02 case.
In June 2014, the attorneys for the former wife were permitted to withdraw as her counsel. On July 24, 2015, the trial court entered a judgment in the .02 case ("the 2015 judgment"), which stated:
"This matter was called for trial on June 24, 2015. The only parties appearing at the call of the docket were [the widow] and her attorney.... [The former wife] had previously discharged her attorney[,] but notice of the trial was sent to her at the address that she had previously given the Court in her filings.
"Remaining before the Court is a counter petition filed by the [husband], which was adopted and repled by [the widow], [the husband]'s present wife, after the [former wife] added her to the present action. In the counter petition [the husband and widow] ask that the Court interpret and clarify a provision in the original divorce decree which required [the husband] to maintain a policy of life insurance naming [the former wife] as a beneficiary, so long as he had a continuing alimony obligation to her. The Decree required that the policy have a $200,000 death benefit. At the death of her husband ... [the widow] was a co-beneficiary of that policy. The [divorce judgment] was based upon a Memorandum Settlement Agreement submitted to the Court by the Parties.
"....
"....
"At the time of their divorce in May 2005, [the husband] was eligible to begin drawing retirement payments from the Southern Company Benefit Annuity. Under the [Qualified Domestic Relations Order], as an Alternate Payee, [the former wife] would have had the same right. In 2005 however, [the former wife]'s potential annuity payments would have been only $371.37 per month or approximately one half of her $700.00 per month alimony payment. By waiting until January 1, 2015, to begin receiving those payments, they would increase to $744.79 per month-or $44.49 more than her alimony payment.
"Did the Parties intend that [the former wife] could keep the entire $200,000 life insurance death benefit if [the husband] died before January 1, 2015, or was the insurance meant to only cover any loss in alimony that might occur between his death and January [1], 2015? Because the decree is capable of two interpretations, the Court finds the Decree to be ambiguous.
"Had [the husband] lived beyond January [1], 2015, it is clear that he could have requested that his alimony obligation be terminated. [The former wife] was not free to ignore such a revenue source in order to place a continued financial burden on her former husband. This would have been consistent with their having made the obligation to pay alimony contingent upon the receipt of pension payments.
"The insurance obligation was clearly intended to protect [the former wife] from a loss of support due to his premature death. [The former wife] was therefore at risk from 2005 until 2015. After *725 2015 however, that risk was gone. She could, and would have had to, completely replace the lost alimony by taking the deferred annuity payments by that date.
"A reasonable interpretation of the insurance provision is therefore, that it was to serve as protection against any loss in alimony payments that [the former wife] might sustain due to [the husband]'s death before January 2015. An interpretation that the parties intended that [the former wife] be allowed to receive both the full amount of the life insurance and also the monthly annuity payments after her husband's death would result in a windfall to [the former wife] and would be unreasonable. Conversely, allowing [the former wife] to receive the full $200,000 insurance death benefit while still having the ability to fully cover her loss by taking annuity payments in excess of the lost support payments, would inflict a severe penalty upon the [husband] and against his surviving widow....
"[The husband] died on July 29, 2013. Therefore it would have taken seventeen months until [the former wife] could completely replace her lost support payments with the pension payments. Accordingly, her interest in the proceeds of the life insurance policy death benefit would have been Eleven Thousand Nine Hundred Dollars ($11,900).
"Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED as follows:
"FIRST: the Court finds that the original Divorce Decree in this matter was reasonably susceptible to more that one meaning and is therefore ambiguous as a matter of law.
"SECOND: The Court finds that the intent of the parties as reflected in the Final Judgment of Divorce in this case, was to protect [the former wife] against any loss of support payments that might exist between the date of [the husband]'s actual death and January 1, 2015, when her annuity payments would exceed her lost support payments. [The former wife] would have had no claim to the proceeds of that policy for any greater amount. The Court finds that amount to be Eleven Thousand Nine Hundred Dollars ($11,900).
"THIRD: Judgment by default is entered against the [former wife] on her Petition for Rule Nisi and in favor of [the husband and the widow]. The Court finds no violation by [the husband] with respect to any provision of the Decree.
"....
"This concludes all matters with respect to this divorce proceeding."
(Footnote omitted.)
On March 21, 2016, the former wife filed a motion for relief from the 2015 judgment pursuant to Rule 60(b)(4), Ala. R. Civ. P., seeking to vacate the 2015 judgment. In her motion, the former wife asserted that the trial court had lacked subject-matter jurisdiction to enter the 2015 judgment because the husband and the widow had not paid a filing fee for their counterpetitions, because there had not been a motion to substitute a proper party for the husband after the husband's death, and because the former wife did not receive notice of the June 24, 2015, hearing. The former wife further asserted that she had been sued by the widow in the Jefferson Circuit Court. The widow filed a motion in opposition to the former wife's motion for relief from the 2015 judgment.
The trial court conducted a hearing on March 28, 2017. It is unclear whether any testimony was taken, and no transcripts of that hearing appear in the record on appeal. On April 28, 2017, the trial court entered a judgment granting the former *726 wife's Rule 60(b)(4) motion ("the 2017 judgment"), stating in pertinent part:
"That the [husband] ... and the Third Party, [the widow], failed to pay a filing fee nor were there Affidavits of Substantial hardship filed for consideration of waiver of court costs."
In the 2017 judgment, the trial court ordered:
"1. [The former wife]'s Motion for 60(b) Relief is hereby granted.
"2. Paragraph 'Second' [of the 2015 judgment] is void for lack of subject-matter jurisdiction and is therefore set aside pursuant to Rule 60(b)(4).
"3. The [husband]'s Petition to Modify is hereby dismissed for failure to substitute parties within six (6) months pursuant to Rule 25 [, Ala. R. Civ. P.] and for lack of subject-matter jurisdiction due to non-payment of filing fee."
On May 30, 2017, the widow filed a motion to alter, amend, or vacate the 2017 judgment "or in the alternative for re-entry of original order." In her motion, the widow asserted that the failure to pay a filing fee was not fatal to her claims. She further asserted that, although failing to substitute a party for the husband pursuant to Rule 25, Ala. R. Civ. P., "may have put an end as to [the former wife's] claims against him, the jurisdiction continued as to [the widow]." The widow also argued that the trial court had the inherent authority to interpret its own orders. On August 14, 2017, the trial court denied the widow's motion after a hearing at which no testimony was taken.
The widow filed her notice of appeal to this court on September 5, 2017. This court has jurisdiction pursuant to § 12-3-10, Ala. Code 1975. No representative of the husband or his estate has appealed from the 2017 judgment.
Discussion
The widow challenges the trial court's granting of the former wife's motion for relief from the 2017 judgment, filed pursuant to Rule 60(b)(4), Ala. R. Civ. P. The widow asserts on appeal that the trial court should not have set aside the 2015 judgment based on the purported absence of a filing fee for the husband's and the widow's counterpetitions. The widow also asserts that the trial court should not have dismissed her counterpetition pursuant to Rule 25, Ala. R. Civ. P.
Before addressing the widow's arguments, we must first determine if the 2017 judgment granting the former wife's Rule 60(b) motion will support an appeal.
" 'The grant of a Rule 60(b) motion is generally treated as interlocutory and not appealable.' Ex parte Short, 434 So.2d 728, 730 (Ala. 1983). However, the rule barring appellate review of an order granting Rule 60(b) relief is not absolute; where such an order bears sufficient indicia of finality to warrant a conclusion that it constitutes a 'final judgment,' pursuant to § 12-22-2, Ala. Code 1975, it is appealable. E.g., Littlefield v. Cupps, 371 So.2d 51, 52 (Ala. Civ. App. 1979) (order granting relief from void judgment under Rule 60(b)(4) for want of jurisdiction finally disposed of case and was immediately appealable); and Sanders v. Blue Cross-Blue Shield of Alabama, Inc., 368 So.2d 8, 9 (Ala. 1979) (order granting Rule 60(b) motion so as to allow a second action to be filed on movant's contract claims was appealable)."
Wal-Mart Stores, Inc. v. Pitts, 900 So.2d 1240, 1244 (Ala. Civ. App. 2004). Because, as explained below, the trial court's granting of the former wife's motion for relief from the 2015 judgment pursuant to Rule 60(b)(4) leaves claims to be adjudicated, *727 the 2017 judgment is interlocutory and will not support an appeal.
In the 2017 judgment, the trial court recognized that the widow had filed claims against the former wife in the .02 case. The trial court purported to vacate certain relief that had been granted on the husband's and widow's counterpetitions, but it then stated that "[t]he [husband]'s Petition to Modify is hereby dismissed for failure to substitute parties within six (6) months pursuant to Rule 25 and for lack of subject-matter jurisdiction due to non-payment of a filing fee." There is no mention of the disposition of the widow's claims against the former wife.[2] The discussion in paragraph 3 of the 2017 judgment regarding the failure to substitute a party under Rule 25, Ala. R. Civ. P., is not applicable to the widow's claims, because it is undisputed that the widow is still living. Accordingly, the 2017 judgment vacated certain relief that had been granted on the counterpetitions, but it did not resolve the claims pending between the widow and the former wife.[3] This court has said that
" ' " '[i]t is a well-established rule that, with limited exceptions, an appeal will lie only from a final judgment which determines the issues before the court and ascertains and declares the rights of the parties involved.' " Powell v. Powell, 718 So.2d 80, 82 (Ala. Civ. App. 1998), quoting Taylor v. Taylor, 398 So.2d 267, 269 (Ala. 1981). "A ruling that relates to fewer than all the parties in a case, or that determines fewer than all the claims, is ordinarily not final as to any of the parties or as to any of the claims." Powell, at 82. See Rule 54(b), Ala. R. Civ. P. "A 'final judgment is a "terminal decision which demonstrates there has been a complete adjudication of all matters in controversy between the litigants." ' " Powell, at 82, quoting Dees v. State, 563 So.2d 1059, 1061 (Ala. Civ. App. 1990). "The question whether an order appealed from is final is jurisdictional, and the reviewing court, on a determination that the order is not final, has a duty to dismiss the case on its own motion." Powell, at 82.' "
Saunders v. Ingram, 236 So.3d 104, 110 (Ala. Civ. App. 2017) (quoting Hinson v. Hinson, 745 So.2d 280, 281 (Ala. Civ. App. 1999) ).
The widow also argues in her appellate brief that the trial court's granting of the former wife's Rule 60(b)(4) motion for failure to substitute a proper party, after the husband's death, pursuant to Rule 25 is due to be reversed. However, because we are dismissing the appeal on the basis that it has been taken from a nonfinal judgment, it is unnecessary for us to resolve this issue.
Conclusion
Because the 2017 judgment did not resolve the pending claim between the former wife and the widow, the appeal is dismissed as having been taken from a nonfinal judgment.
APPEAL DISMISSED.
Thompson, P.J., and Pittman and Moore, JJ., concur.
Thomas, J., concurs in the result, without writing.

It appears from the record that the husband died on July 29, 2013.

We express no opinion on the merits of the widow's claims or on whether she may proceed with the claims following the death of the husband.

Because we conclude that the 2017 judgment dismissed the husband's counterpetition but did not adjudicate the pending claims between the widow and the former wife, resulting in a nonfinal judgment, we do not address the widow's argument regarding whether the nonpayment of a filing fee for her counterpetition is a jurisdictional defect. But see Landry v. Landry, 182 So.3d 553 (Ala. Civ. App. 2014) (holding that failure to collect a filing fee on a counterclaim did not deprive the trial court of jurisdiction over the counterclaim).