Rel: May 24, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

## CL-2023-0254

_____

## Ronald Jay Cieutat

## v.

## Angela Cates Cieutat

## Appeal from Baldwin Circuit Court
## (DR-15-900749.02)

PER CURIAM.

Ronald Jay Cieutat ("the father") appeals from an order entered by the Baldwin Circuit Court ("the trial court") that modified his visitation schedule with W.B.C. ("the child"). We dismiss the appeal.

On November 30, 2016, the trial court entered a final judgment divorcing the father from Angela Cates Cieutat ("the mother"). The judgment incorporated a settlement agreement between the parties that provided in pertinent part:

"3. … [The child born, in January 2007,] is a severely autistic special needs child and requires special schooling and attention.

"4. The parties agree that they shall share joint legal custody and physical custody of [the child]. [The child] will stay with the mother during the weekdays with the father exercising parenting time every weekend, alternating holidays, and alternating full weeks during the children's summer vacation."

On April 5, 2021, the mother filed a petition to modify the divorce judgment.[1] In her petition, the mother alleged that the father's visitation schedule needed to be modified because, she said, the needs of the child were not being met during the father's visitations. She asked the trial court to modify the divorce judgment to provide that, during his visitations with the child, the father provide a more "protective arrangement." On April 14, 2021, the father filed his answer. In his

---

[1]The mother also filed a petition for a rule nisi. However, because we conclude, infra, that we must dismiss this appeal for reasons involving modification of the father's visitation schedule, we pretermit discussion of the contempt portion of the action.

answer, the father alleged that "if any change need[ed] to be made to the current parenting schedule, [he] should receive more time with [the child] as such would be in the child's best interest."

On December 8, 2022, the trial court conducted a hearing. The record reflects that the child was nine years old when the divorce judgment was entered and that, although the parties both wanted what was best for the child, they disagreed on how to take care of the child. The mother testified that the child at the time of the final hearing was 15 years old, 6 feet 6 inches tall, and weighed 250 pounds. He was completely nonverbal, considered severely autistic, and engaged in self-abusive behaviors when he was upset or stressed by a disruption in his routine. According to the mother, the child was a very sweet, gigantic toddler, who required 24-hour care because he did not understand the difference between harmful and nonharmful conduct. The mother explained that because of the child's size, his inability to cope with disruptions in his routine, and his inability to differentiate between harmful and nonharmful conduct, he required a routine and special accommodations, including shatterproof windows, doors with locks, and

constant monitoring, assistance, and care to prevent his self-abusive behaviors.

The mother acknowledged that the divorce judgment provided that the parties share joint legal and physical custody of the child and that she had terminated the father's visitation in March 2021. According to the mother, since the entry of the divorce judgment, the father had never exercised joint physical custody of the child but instead had exercised weekend visitation sporadically with the child. She explained that after the child had visited with the father, the child returned tired, agitated, unruly and would not sleep for several days. For example, the mother explained that after one visit, the child, during the night, had knocked a hole in his bedroom wall and several days passed before the child returned to his unagitated self. The mother testified that she attributed the child's stressed condition and self-abusive behaviors after visits with the father to the father not providing the child with a regular schedule, the necessary accommodations, and the required assistance. She stated that after the child's visits with the father ceased and the child's schedule became consistent, the child's behaviors had improved, and the child had not engaged in similar self-harming conduct. The mother admitted that

she had not been inside the father's house; however, she insisted that based on the child's cuts and bruises when he was returned to her custody and the child's self-abusive behaviors after visits with the father, the father's house did not provide adequate accommodations for the child's special needs and safety requirements. The trial court admitted into evidence, without objection from the father, a care plan for the child that identified various maladaptive behaviors, their triggers, and antecedent interventions.

The father disputed the mother's testimony, stating that when the child had been in his custody, he had never placed the child in physical or emotional danger. He insisted, however, that the mother was uncooperative and refused to communicate "in a reasonable adult way" about the child's care. He admitted that he owned regular houses without special accommodations but insisted that he provided adequate safety measures for the child. According to the father, the child, while in his care, had never escaped from any of his residences and had never been injured, more than a few scratches. The father admitted that while the litigation had been pending (approximately 22 months), despite having the ability to do so, he had not visited the child at his school or

asked the trial court for visitation with the child. He testified that he wanted to continue his every weekend overnight visitation with the child, and that he was willing to maintain a routine for the child.

On January 5, 2023, the trial court entered an order. In the order, the trial court made "the legal conclusion" that the parties had not been exercising joint custody of the child; rather, the mother had had custody and the father had had "parenting time." The trial court modified the father's visitation schedule by awarding him visitation with the child for one day each weekend with no overnight stay. The trial court also ordered the father to have his house evaluated to determine how the house may need to be modified to accommodate the child's physical and emotional needs. The trial court provided in its order that after the father had informed the court that he had made the necessary safety accommodations for the child, it would consider reinstating the father's overnight visitation.

On February 2, 2023, the father filed a motion, arguing, among other things, that the trial court had exceeded its discretion by limiting his parenting time and ordering an evaluation of his house. On March 20, 2023, the trial court entered an order that amended its January 5,

6

2023, order to provide that "a therapist who regularly works with autistic children/adults will be the one to assess the father's home for any modifications necessary to meet the needs of [the child]." On April 24, 2023, the father filed his notice of appeal.

Before we can address the merits of the father's appeal, we must determine whether we have jurisdiction over this appeal.

> "'"It is a well-established rule that, with limited exceptions, an appeal will lie only from a final judgment which determines the issues before the court and ascertains and declares the rights of the parties involved."' Powell v. Powell, 718 So. 2d 80, 82 (Ala. Civ. App. 1998), quoting Taylor v. Taylor, 398 So. 2d 267, 269 (Ala. 1981). 'A ruling that relates to fewer than all the parties in a case, or that determines fewer than all the claims, is ordinarily not final as to any of the parties or as to any of the claims.' Powell, at 82. See Rule 54(b), Ala. R. Civ. P. 'A "final judgment is a 'terminal decision which demonstrates there has been a complete adjudication of all matters in controversy between the litigants.'"' Powell, at 82, quoting Dees v. State, 563 So. 2d 1059, 1061 (Ala. Civ. App. 1990). 'The question whether an order appealed from is final is jurisdictional, and the reviewing court, on a determination that the order is not final, has a duty to dismiss the case on its own motion.' Powell, at 82.
>
> "… 'The question of finality of the order may be phrased as whether there is "something more for the trial court to do."' Id., quoting Wesley v. Brandon, 419 So. 2d 257, 258 (Ala. Civ. App. 1982)."

Hinson v. Hinson, 745 So. 2d 280, 281 (Ala. Civ. App. 1999).

After carefully reviewing the record and the trial court's order, we conclude that the trial court did not enter a final judgment that will support an appeal; rather it entered a pendente lite order that requires additional proceedings. In its order, the trial court conditionally modified the father's visitation schedule subject to an inspection of the father's house by a qualified therapist and an assurance from the father that he will provide a safe, stable environment for the child during the visits. The order implies that once those conditions have been satisfied, the father's visitation schedule will be finally modified. However, until the father addressed the safety concerns and assured that those concerns had been remedied, the trial court provided a temporary visitation schedule that modified the father's visitation schedule to exclude overnight visits. Thus, the order contemplates further proceedings for the trial court to review the results of the inspection and to consider any assurances that the father may provide. In Ex parte J.P., 641 So. 2d 276, 278 (Ala. 1994), our supreme court explained that "[p]endente lite orders are generally entered only during the pendency of the litigation and are usually replaced by a final order or judgment that is entered at the end of the litigation. Sims v. Sims, 515 So. 2d 1 (Ala. Civ. App. 1987)." Because

8

the trial court's order clearly envisioned that additional proceedings would occur to address the father's ability to protect the child during visitations, the order is not a final judgment. Therefore, we dismiss the father's appeal for the trial court to conduct further proceedings to ascertain whether the conditions set forth in its January 5, 2023, order have been satisfied and to enter a final judgment. See <u>Wesley v. Brandon</u>, 419 So. 2d 257, 259 (Ala. Civ. App. 1982)("An order which does not contain the essentials of a final judgment necessary to support an appeal must be dismissed.")

APPEAL DISMISSED.

Moore, P.J., and Fridy and Lewis, JJ., concur.

Edwards, J., concurs in the result, without opinion.

Hanson, J., dissents, with opinion.

HANSON, Judge, dissenting.

I respectfully dissent from the majority's dismissal of this appeal. "A final judgment is one that disposes of all the claims and controversies between the parties." Heaston v. Nabors, 889 So. 2d 588, 590 (Ala. Civ. App. 2004). My review of the record and the January 5, 2023, order entered by the Baldwin Circuit Court ("the trial court") leads me to the conclusion that the trial court entered a final judgment.

Initially, I note that the trial court opened the December 8, 2022, hearing by stating "[t]his is a final trial." At the conclusion of the evidence, the trial court stated:

"I know firsthand the difficulty, emotional and physical difficulties in dealing with an adolescent or an adult child with autism and I understand its frustrations. I don't understand a parent simply walking out of a child's life, regardless of the difficulty; I don't understand that at all.

"It's one thing to walk out of their life in general.

"It's another to walk out of their life when there is a case pending. So there is a remedy available any day of the week to come before me and get parenting time. Any day of the week. No filing fee to be paid. No extra effort that has to be made. Nothing. Just a motion to say I want parenting time and it's never been done.

"You haven't seen your own child in two years, Mr. Cieutat. In two years. I can't even fathom that. And I don't believe that when you did see him, that you did what you

10

needed to do to accommodate his needs. I don't believe that, except for write a check. You at least did that and that, I know, has gone a long way to at least pay for some schooling and education.

"It does not appear, from the testimony and evidence presented, that when the parenting arrangement was whatever it was before, that it was something that benefited [the child]. It is not working if a child is putting his body through a wall and having to be treated medically for injuries … related to that.

"One thing that I do know for certain, and you do not have to be ABA certified to know, is that autistic children need routine and stability. And one thing I see is that that child has had that over the past two years and has benefitted, at least from that routine.

"Now, has he benefited from not seeing his dad? I don't believe that. I want you to see your son, but if you want to see him, you have to make special accommodations for him.

"Wanting him or hoping that he can simply live in a regular home environment is not realistic; it's just not.

"….

"So if you want to see your son and you can, then you need to do whatever is necessary to accommodate his needs physically in your home, if you want him there. Whatever the plan directs, be able to accommodate that plan fully. If there is a therapist that can specifically delineate what may be necessary for him as far as a physical environment, that will need to be accomplished and there will need to be some way to ensure that that has been done. I am going to modify the parenting time right now, not to allow any overnight until there is some assurance that those things have been accomplished ….

11

"So in that regard, that will be the modification of the parenting schedule based on what I've just said. Again, I'm not changing the time.

"If you want to see him every weekend and during the summer, you can. Except that I'm not -- I would modify that to one day over the weekend so that there's no overnight and then the summer would necessarily need to change as well. I think what we'll probably just do is to stay consistent year round with that schedule, with accommodations being made for holidays and things that don't fall on a weekend. If there's a holiday, y'all need to try to accommodate that. But I think that will give him much more stability and consistency in his routine."

On January 5, 2023, the trial court entered an order, entitled "final order," that stated in pertinent part:

"3. [The father] shall have someone specifically delineate what is necessary for him in his home to be able to physically accommodate [the child] with his special needs. That needs to be done and needs to occur before the next visitation.

"4. The court will modify the parenting time not to allow any overnight visits until there is assurance by [the father] that the accommodations have been accomplished and the child is not locked up during the day. [The father] will be allowed to have parenting time no more than one day during the weekend so long as there is no overnight stay. The summer visitation will be modified from prior orders to maintain the consistency of no more than one day every weekend. The visitation will accommodate holidays that do not fall on the weekend. If there is a holiday, then the parties need to accommodate that in order to give the child as much routine consistency as possible."

12

I admit that the trial court's order modifying the father's visitation schedule is ambiguous and subject to interpretation. However, my reading of the trial court's statements at the close of the "final trial" and its subsequent "final order" lead me to the conclude that the trial court issued a final judgment that permanently modified the father's visitation schedule.[2] The trial court's modification of the father's visitation schedule is not pendente lite, i.e., one pending a review hearing or a further hearing on the matter that was before the court at the time of the judgment; rather, it settles the visitation-schedule issue. The trial court awarded the father with visitation of only one day per weekend. The trial court then stated that that visitation award would remain until the father assures the court that he has made a change in his circumstances

---

[2]I recognize that that the character of a pleading is determined and interpreted from its essential substance, and not from its title. See Pharo v. Pharo, 199 So. 3d 93, 95 n.1 (Ala. Civ. App. 2015). Likewise, the character of an order should be derived from its substance, not its title. However, in circumstances like those presented in this case, when this court concludes that the character of a trial court's order is determined to be implicit, I believe that because a trial court is presumed to know the law, see Horne-Ballard v. Ballard, 308 So. 3d 503, 515 (Ala. Civ. App. 2020), the trial court's choice of the word "final" to describe its hearing and its order indicates the trial court's intent for the character of its order.

to ensure that the child, if allowed to stay overnight, is safe. In other words, the trial court informed the father of his right to modify the visitation schedule in the future and what concerns must be addressed to prove a change in circumstances to support a modification of his visitation schedule of one-day visitation each weekend. If the trial court had intended for its modification of the father's visitation schedule to be temporary and had considered additional proceedings necessary, the trial court would not have addressed visitation during the summer and holidays in its order issued in early January and would have provided some timelines in its order for the father's completion of the evaluation of his house and a subsequent hearing. The trial court, however, did not set a timeline or indicate a need for future hearing; therefore, I read the trial court's order as constituting a final determination that modified the father's visitation schedule.

Because I believe the trial court permanently, not temporarily, modified the father's visitation schedule and, in so doing, "dispose[d] of all the claims and controversies between the parties," see Heaston, supra, I conclude that the trial court entered a final judgment, and,

14

consequently, that this court has jurisdiction over the father's appeal.

Therefore, I respectfully dissent.